IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| KENNETH SALLEN,<br><br>        Movant,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | CASE NO.: 4:22-cr-172 |

### REPORT AND RECOMMENDATION

Movant Kenneth Sallen ("Sallen") filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255.  Doc. 35.  Respondent filed a Motion to Dismiss, and Sallen filed a Response.  Docs. 41, 44.[1]  For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Sallen's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Sallen a Certificate of Appealability and *in forma pauperis* status on appeal.

### BACKGROUND

Sallen was indicted on two counts of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), based on his possession of two different firearms on two different occasions.  Doc. 1.  Sallen faced a statutory maximum of 10 years' imprisonment on count 1 of the indictment and 15 years' imprisonment on count 2 of the indictment.  Doc. 2.  Not

---

[1]     Sallen's Response at Docket Number 43 is not a response to the Motion to Dismiss; rather, Sallen asserts Respondent did not file its responsive pleading on January 2, 2024, as directed.  Doc. 43.  Sallen authored this filing on January 3, 2024, before he received the Motion to Dismiss, which was timely filed on January 2, 2024.  Doc. 41.

long after the indictment was filed, the Government notified the Court Sallen, through counsel, and the Government had reached a plea agreement. Doc. 18. Sallen agreed to plead guilty to count 2 of the indictment and faced a statutory maximum sentence of 15 years in prison. Doc. 21 at 2. Judge Wood conducted a Rule 11, or change of plea, hearing.

At the outset, Judge Wood informed Sallen the purpose of the hearing was to ensure he understood the case pending against him and all of the rights he would waive if Judge Wood accepted his plea, there was a factual basis for the finding of guilt on the charge to which he was pleading guilty, and pleading guilty was what Sallen wanted to do. Doc. 39 at 2–3. Sallen affirmed no one was making him, pushing him, or leaning on him to change his plea. Id. at 3. During the plea hearing, Assistant United States Attorney ("AUSA") Marcela Mateo provided the factual basis for Sallen's plea agreement by calling Federal Bureau of Investigation Task Force Officer Lance Clay ("TFO Clay") to testify. Id. at 19–22. Sallen did not dispute TFO Clay's testimony and admitted to the truth of his testimony. Id at 22–23. Judge Wood accepted Sallen's guilty plea, adjudged him guilty of count 2 of the indictment, and directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR"). Id. at 23.

Judge Wood conducted Sallen's sentencing hearing on June 8, 2023. Doc. 40. Judge Wood reminded Sallen he appeared with Mr. Cain Smith for the Rule 11 hearing and she directed the Probation Office to prepare a PSR. Id. at 2–3. After adopting the probation officer's factual statements contained in the PSR, to which there were no objections, Judge Wood determined Sallen's total offense level was 23 and he has a criminal history category of IV. Judge Wood noted the advisory Sentencing Guidelines range was 70 to 87 months in prison and the statutory maximum was 15 years in prison. Id. at 3–4. After hearing from Sallen's witnesses and AUSA Mateo, Sallen addressed the Court. Id. at 4–12. Judge Wood stated she reviewed the

2

PSR and the attachments, listened to the witnesses and attorneys, and considered the factors of 18 U.S.C. § 3553.  Based on all of these factors, Judge Wood sentenced Sallen to a 56-month sentence, which she noted was below the Guidelines range.  Id. at 14–15.  Judge Wood reminded the parties of Sallen's appeal and collateral attack waivers contained in the plea agreement.  Id. at 17.

Sallen filed the instant § 2255 Motion.  Doc. 35.  The Government filed a Motion to Dismiss.  Doc. 41.  Sallen filed a Response.  Doc. 44.  This matter is fully briefed and ready for review.

## DISCUSSION

**I.     The Collateral Attack Waiver Provision in Sallen's Plea Agreement Bars His Claim**

Sallen asks the Court to vacate his § 922(g)(1) sentence based on the presumption § 922(g)(1) is unconstitutional.  Doc. 35 at 4.  The Government contends the valid collateral attack waiver in Sallen's plea agreement bars his claim.  Doc. 41 at 6.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional defendant could not raise double jeopardy claim on collateral attack following guilty plea); see also Jordan v. United States, CV118-142, 2019 WL 4879136, at *8 (S.D. Ga. Aug. 5, 2019) (noting record verified movant's agreement to collateral attack waiver of all claims other than ineffective assistance of counsel was knowing and voluntary and barred claims covered by that waiver); in turn citing Carstarphen v. United States, Civ. Action

No. 07-0417, 2008 WL 4369010, at *2–3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct based on valid collateral attack waiver)).

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)).

In addition, a defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

Sallen and his attorney, Cain Smith, were able to negotiate a plea agreement with the Government whereby Sallen agreed to plead guilty to count 2 of the indictment, possession of a Kel-Tec Model Sub 2000 .40 caliber pistol by a prohibited person. Doc. 1 at 2; Doc. 21 at 1–2. In exchange, the Government agreed to recommend Sallen be sentenced to the low end of the advisory Guidelines range, as determined by the Court. Doc. 21 at 4. The plea agreement set

4

forth the statutory elements and factual basis of the offense to which Sallen was pleading guilty. Id. at 1–2. Sallen agreed he was guilty of the offense. Id. at 2. Additionally, Sallen agreed no one had promised him a particular sentence or range and the Court could impose a sentence up to the statutory maximum sentence but would look to the Sentencing Guidelines and sentencing factors of 18 U.S.C. § 3553(a). Id. at 2–3.

Sallen's plea agreement contained a collateral attack waiver provision, which states: "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel." Id. at 8. Sallen affirmed he had read and reviewed the agreement with his attorney, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate. Id. at 11.

Sallen appeared before Judge Wood for his Rule 11 hearing. Doc. 39. Judge Wood informed Sallen the purpose of the hearing was to ensure he understood the case pending against him and all of the rights he would waive if Judge Wood accepted his plea, there was a factual basis for the finding of guilt on the charge to which he was pleading guilty, and pleading guilty was what Sallen wanted to do. Id. at 2–3. Sallen affirmed no one was making him, pushing him, or leaning on him to change his plea. Id. at 3.

After being sworn in, Judge Wood obtained biographical information from Sallen, including his age, educational background, and work history. Id. at 4–5. Sallen noted he had not had any drugs or alcohol within 48 hours of the Rule 11 hearing and had not been diagnosed with any mental or physical disabilities. Id. at 5. Judge Wood stated Sallen did not have to plead guilty and if he chose to persist in his not guilty plea, he would have the right to: a public and

speedy trial by jury; a presumption of innocence that would follow him throughout that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent. Id. at 6–7. However, Judge Wood cautioned Sallen he would be waiving these rights if he pleaded guilty and she accepted that guilty plea. Id. at 7. Sallen stated he understood. Id. Sallen also stated he and Mr. Smith had had the opportunity to talk about the facts and the law pertaining to his case and the indictment filed against him, as well as about the proposed plea agreement and the application of the advisory Sentencing Guidelines in general terms. Id. at 7–8. When Judge Wood asked Sallen whether he was satisfied with Mr. Smith's representation, he replied he was and had no complaints whatsoever about Mr. Smith. Id. at 8.

Judge Wood reviewed the indictment with Sallen and the essential elements of the crimes charged in that indictment. Id. However, Judge Wood noted under the agreement the parties wished to enter, Sallen agreed to plead guilty to count 2 of the indictment: possession of a firearm by a prohibited person. Id. at 9. Judge Wood also noted, for Sallen to be convicted of count 2 of the indictment, the Government would have to prove beyond a reasonable doubt the three essential elements of this offense, which were: first, Sallen knowingly possessed the firearm as charged; second, at the time Sallen possessed the firearm, he knew he had been convicted of a felony (i.e., a crime punishable by imprisonment exceeding one year); and third, Sallen knowingly possessed the firearm in or affecting interstate or foreign commerce. Id. at 9–10. By pleading guilty, Judge Wood noted Sallen was admitting the essential elements of the crime to which he intended to plead guilty were satisfied. Id. at 10. Judge Wood asked for clarification about the maximum statutory penalty being 15 years in prison, and AUSA Mateo notified Judge Wood there had been an amendment made to § 922(g)(1), which increased the

statutory maximum sentence. Mr. Smith verified he explained this to Sallen, and Sallen understood the higher penalty involved. Id. at 11. Judge Wood advised Sallen of the maximum sentence she could impose and ensured Sallen understood the maximum sentence she could impose was 15 years in prison. Moreover, Judge Wood explained to Sallen, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553. Id. at 11–12. In her consideration of his sentence, Judge Wood also explained some of the "major factors" she would have to take into account were Sallen's criminal history, his role in the offense, and whether he was truthful and accepted responsibility for his actions. Id. at 12–13. Sallen affirmed no one had promised him an exact sentence and his attorney had his permission to negotiate a plea agreement with the Government. Id. at 13.

Judge Wood asked the AUSA to summarize the provisions of the plea agreement. AUSA Mateo stated the material provisions were:

> [T]he defendant will plead guilty to Count 2 of the indictment. If the Court determines that the defendant qualifies for an adjustment under the [S]entencing [G]uidelines for acceptance of responsibility and the offense level prior to that adjustment is 16 or greater, the Government will move for an additional one-level reduction in offense level.
>
> The Government will recommend that the defendant be sentenced to the low end of the advisory [G]uideline range determined by [t]he Court at sentencing.
>
> . . . .
>
> At sentencing, the Government will move to dismiss Count 1 of the indictment that remains pending against the defendant at this time.
>
> Contained in the plea agreement are various waivers. The first is a waiver of appeal in which the defendant waives his right to appeal on any ground with only three exceptions. Also[,] the defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method[,] including but not limited to a [28 U.S.C. §] 2255 motion, the only exception there being a claim of ineffective assistance of counsel.

Id. at 13–14.  Judge Wood asked Mr. Smith and Sallen if AUSA Mateo's summarization of the plea agreement was consistent with the agreement Mr. Smith negotiated and Sallen read and signed, and they stated it was.  Id. at 15.  Sallen affirmed no one had made him any promises about the outcome of his case, other than the provisions of his plea agreement.  Id. at 16.

Judge Wood discussed the appellate rights waiver contained in the plea agreement by which Sallen agreed to waive his right to a direct appeal of his conviction and sentence on any ground.  Judge Wood noted there were three exceptions to this waiver: if she sentenced him above the statutory maximum; if she sentenced him above the advisory Guidelines range she found; or if the Government filed a direct appeal.  Id. at 16.  Sallen understood he waived all other direct appeal rights.  Id.  Judge Wood also explained the agreement contained a collateral attack waiver: "'Defendant entirely waives his right to collaterally attach his conviction and sentence on any ground and by any method[,] including but not limited to a 28 [U.S.C. §] 2255 motion[,]'" other than based on a claim of ineffective assistance of counsel.  Id. at 16–17.  Sallen stated he understood that waiver and had no questions about it.  Id. at 17.

Judge Wood then asked Sallen whether he wished to still plead guilty to count 2 of the indictment because he was in fact guilty of this offense, and he answered in the affirmative.  Id.  Judge Wood also asked Sallen whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did.  Id. at 18.  Judge Wood determined Sallen's offer to plead guilty was "knowing" and "voluntary."  Id.  Sallen agreed, and Judge Wood approved the plea agreement.  Id.

TFO Clay provided a factual basis for the plea, and Sallen stated he did not dispute this testimony and admitted to the truth of the testimony.  Id. at 19–23.  Judge Wood accepted

Sallen's guilty plea, adjudged him guilty of count 2 of the indictment, and advised Sallen a probation officer would prepare a PSR. Id. at 23.

To be clear, Judge Wood informed Sallen at the outset of the Rule 11 hearing the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Sallen wanted to do after consultation with his attorney. After being asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing, Sallen averred no one was forcing him to plead guilty and pleading guilty was what he wanted to do. Judge Wood discussed the specific rights Sallen was afforded if he chose to persist with a not guilty plea and advised Sallen he would waive those rights if he pleaded guilty and she accepted his plea. Sallen stated he had spoken with his attorney about the facts and law of his case, including the plea agreement. Sallen verified AUSA Mateo's summary of the plea agreement was consistent with the plea he had signed. Judge Wood asked Sallen whether he wanted to plead guilty because he was, in fact, guilty of count 2 of the indictment, and he answered in the affirmative. Sallen declared he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so. Judge Wood determined Sallen's guilty plea was knowing and voluntary. TFO Clay then provided a factual basis for Sallen's plea, and Sallen agreed with the Government's factual basis. Judge Wood accepted Sallen's plea and adjudged him guilty of count 2 of the indictment. See Doc. 39. In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing. Lambert, 777 F. App'x at 339.

Because Sallen's guilty plea was knowing and voluntary and Judge Wood ensured Sallen understood he was waiving his right to collaterally attack his conviction or sentence in any manner, other than on a claim of ineffective assistance of counsel, the collateral waiver provision

of Sallen's plea precludes review of his claim regarding the constitutionality of § 922(g)(1). Thus, the Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** Sallen's § 2255 Motion.[2]

## II. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Sallen leave to appeal *in forma pauperis*. Though Sallen has not yet filed a notice of appeal, it would be appropriate to address this issue in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[2]  Sallen does not dispute this ground of Respondent's Motion to Dismiss. Doc. 44. Because Sallen's collateral attack waiver bars his claim, I decline to address Respondent's alternative grounds for dismissal. Doc. 41. However, the Court could grant the motion to dismiss on the two other grounds— Sallen procedurally defaulted this claim and Sallen's claim has no merit—based on the reasons Respondent provided.

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Sallen a Certificate of Appealability, Sallen is advised he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal

would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DENY** Sallen's § 28 U.S.C. § 2255 Motion. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Sallen *in forma pauperis* status on appeal and a Certificate of Appealability.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of

Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 9th day of September, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA